IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PHU VAN NGUYEN,               :              NO. 2:05-cv-1241-EL
            Petitioner    :
                        :
     VS.                   :
                        :
SUPERINTENDENT GRACE   :
OF SCI-HUNTINGDON,     :
     AND                 :
THE DISTRICT ATTORNEY OF :
THE COUNTY OF BERKS,    :
     AND                 :
THE ATTORNEY GENERAL OF :
THE STATE OF PENNSYLVANIA, :
         Respondents   :

REPORT AND RECOMMENDATION

CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

Currently pending before this Court is a Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. § 2254, by a prisoner currently incarcerated in the State Correctional Institution at Huntingdon, Pennsylvania.  For the following reasons, it is recommended that the petition be denied.

I.      PROCEDURAL HISTORY

Following a jury trial before the Honorable Scott D. Keller of the Court of Common Pleas of Berks County, petitioner was convicted on February 15, 2000, of numerous charges, including burglary and robbery.  The charges arose from a 1998 home invasion in which defendant and another individual allegedly robbed and terrorized Ms. Kieu Lam, her daughter, and grandchildren.  On March 6, 2000, Judge Keller sentenced

petitioner to a term of ten to twenty years in a state correctional facility with credit for 242 days served. Following a restitution hearing on April 4, 2000, petitioner was also ordered to pay $27,000. Memorandum Opinion of Trial Court (10/20/03) at 1.

Petitioner filed a Notice of Appeal to the Superior Court of Pennsylvania on April 5, 2000. As petitioner claimed ineffective assistance of counsel, the court appointed new counsel on appeal. On February 15, 2001, by way of a memorandum opinion, the Superior Court of Pennsylvania affirmed, but remanded the case for an evidentiary hearing "to determine whether counsel was ineffective in failing to elicit testimony regarding Ms. Lam's initial failure to identify Appellant." Memorandum Opinion of Superior Court (4/25/02) at 3 (quoting Memorandum Opinion of Superior Court (2/15/01) at 6).

The evidentiary hearing, held on May 23, 2001, revealed that counsel did not question the witness on her delayed identification of petitioner because he feared that doing so would expose the damaging fact that petitioner's image appeared on a television news report in connection with a murder investigation. Trial counsel explained that even if the jury were kept ignorant of the murder investigation, he feared they would deduce wrongdoing from the fact that petitioner's image had appeared on television. The trial court found this to be reasonable strategy, and dismissed the complaint on May 25, 2001. Memorandum Opinion of Trial Court (10/20/03) at 2. On April 25, 2002, the Superior Court affirmed, dismissing petitioner's ineffective assistance of counsel claim. Memorandum Opinion of Superior Court (4/25/02) at 7.

Thereafter, on April 4, 2003, petitioner filed a pro se petition for state collateral review pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. ANN. § 9541 (2005), et seq., alleging:

> 1. The jury returned a verdict of guilty on all three (3) felony gradings of robbery (F1, F2, F3) constituting an inconsistent verdict.
>
> 2. The Commonwealth did not sufficiently support the victim's claimed loss of $27,500.00 in stolen property.
>
> 3. The Court's restitution order is not fairly supported by the record, constituting an illegal sentence, as the Defendant was assessed the entire amount of $27,500.00, despite the Commonwealth's theory that two (2) other persons were equally culpable for the loss.
>
> 4. Trial and appellate counsel failed to object or otherwise raise the foregoing allegations to the trial court or on direct appeal.

On July 17, 2003, petitioner's counsel, appointed by the PCRA court, filed a "no merit" letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) and Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), seeking to withdraw from the case. On July 31, 2003, following an independent review of petitioner's pro se petition, but without holding a hearing, the PCRA court issued an Order and Notice of Intent to Dismiss, permitting counsel to withdraw, and informing petitioner that he had twenty days to respond before an order dismissing his PCRA petition would be filed.

Fifteen days later, on August 15, 2003, petitioner responded. However, instead of addressing the Notice of Intent to Dismiss, he attempted to amend his PCRA petition with 15 issues, most of which did not pertain to the 4 issues in his original petition. The PCRA court dismissed the PCRA petition by way of orders dated August 18 and 20, 2003.

3

On September 8, 2003, petitioner filed a pro se Notice of Appeal to the Pennsylvania Superior Court in which he raised the following issues[1]:

1. Whether appellant was denied a fair trial?

2. Whether appellant was denied his Sixth Amendment right to counsel during trial?

3. Whether the PCRA Court abused its discretion failing to permit appellant to amend the PCRA in response to a notice to dismiss?

Because the first two issues were not raised in the PCRA petition, and finding the third issue lacking merit, the Pennsylvania Superior Court denied relief on June 16, 2004.

Thereafter, on May 20, 2005, petitioner filed the instant Petition for Writ of Habeas Corpus, alleging only that trial counsel was ineffective for not questioning Ms. Lam regarding her failure to identify petitioner until one year following the crime.

II.      PROCEDURAL DEFAULT

Respondent alleges that petitioner's single claim is procedurally defaulted because petitioner has failed to exhaust the remedies available in the courts of the Commonwealth of Pennsylvania.  See 28 U.S.C. § 2254(b)(1)(A).  Upon review, this Court disagrees.

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999).  In other words, a petitioner must invoke "one complete round of the State's established review process" prior to asserting the claim on federal habeas review.  Id. at 845.  A petitioner is not deemed to have exhausted all available

---

[1] Petitioner filed a Concise Statement of Matters Complained of on Appeal, where he raised 15 issues. Among these were the three issues presented on appeal to the Pennsylvania Superior Court.

state law remedies if there still exist any procedures that would allow him to raise the question presented.  28 U.S.C. § 2254(c);  <u>Castille v. Peoples</u>, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059 (1989).

 Prior to May of 2000, completion of "one complete round of the State's established review process" required that a habeas petitioner take each and every one of his habeas claims to the Pennsylvania Superior Court and the Pennsylvania Supreme Court.  On May 9, 2000, however, the Pennsylvania Supreme Court issued a seminal <u>per curiam</u> order, which held that when a claim has been presented to either the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied, "the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief."  <u>In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases</u>, No. 218 1, 2 (Pa. May 9, 2000).  Although the Third Circuit has yet to provide definitive guidance, every decision issuing from within this Circuit has held that Order 218 eliminates the mandate that habeas petitioners seek discretionary review from the Pennsylvania Supreme Court in order to satisfy the exhaustion requirement.[2]  Notably, however, the Third Circuit has explicitly held that the Order "did not retroactively alter the nature of 'the ordinary appellate review procedure' in the

---

[2] <u>See</u>, <u>e.g.</u>, <u>Wilson v. Vaughn</u>, 304 F. Supp. 2d 652, 658 (E.D. Pa. 2004) (following Order 218, a habeas claim need not be appealed to the state supreme court to be preserved); <u>Bowen v. Blaine</u>, 243 F. Supp. 2d 296, 304 (E.D. Pa. 2003) (finding that the United States Supreme Court, in <u>O'Sullivan</u>, left open the option that a state court might control its docket if it made review by the state supreme court non-mandatory); <u>Lambert v. Blackwell</u>, 175 F. Supp. 2d 776, 784 (E.D. Pa. 2001), <u>vacated in part</u>, 205 F.R.D. 180 (E.D. Pa. 2002); (Order No. 218 makes a petition for allocatur an extraordinary remedy of which prisoners need not avail themselves.); <u>Mattis v. Vaughn</u>, 128 F. Supp. 2d 249, 261 (E.D. Pa. 2001), <u>aff'd</u>, 80 Fed. Appx. 154 (3d Cir. 2003), <u>cert. denied</u>, 540 U.S. 1223, 124 S. Ct. 1815 (2004) (Order No. 218 removes petitions for discretionary review from "one full round" of Pennsylvania's ordinary review process); <u>Blasi v. Attorney General of Com. Of Pennsylvania</u>, 120 F. Supp. 2d 451, 469 (M.D. Pa. 2000) <u>aff'd</u>, 275 F.3d 33 (3d Cir. 2001), <u>cert. denied</u>, 535 U.S. 987, 122 S. Ct. 1540 (2002) ("the order of the Supreme Court of Pennsylvania removes a petition for allocatur from the one complete round of Pennsylvania's established appellate review process.").

Commonwealth." Wenger v. Frank, 266 F.3d 218, 225 (3d Cir. 2001), cert. denied, 535 U.S. 957, 122 S. Ct. 1364 (2002). Accordingly, Order 218 "does not apply in cases in which the time to petition for review by the state supreme court expired prior to the date of the order." Id. at 226; see also Villot v. Varner, 373 F.3d 327, 338 n.14 (3d Cir. 2004) (reaffirming Wenger).

In the case at bar, respondent claims that petitioner's claim is procedurally defaulted. Specifically, respondent notes that petitioner did not raise the claim in his PCRA petition. However, petitioner raised the identical claim on direct appeal. Following an evidentiary hearing, the Pennsylvania Superior Court dismissed the claim on April 25, 2002. Under Order 218, petitioner has thus exhausted all available state remedies regarding the ineffective assistance of counsel question. We therefore find that petitioner's claim has been properly exhausted and is not procedurally defaulted. Accordingly, we will address the merits of petitioner's claim.

III.    STANDARD OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> An application for a writ of habeas corpus on behalf of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless that adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The United States Supreme Court interpreted this statute and more clearly defined the two-part standard of review in <u>Williams v. Taylor</u>, 529 U.S. 362, 404-405, 120 S. Ct. 1495 (2000).

Under the first prong of the review, a state court decision is "contrary to" the "clearly established federal law, determined by the Supreme Court of the United States," (1)  "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court]."  <u>Id</u>. at 405.

Under the second prong of the review, a state court decision involves an unreasonable application of Supreme Court precedent, (1) "if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id</u>. at 407-408.  Under this clause, however, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applies clearly-established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  <u>Id</u>. at 410.

IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's sole habeas claim is ineffective assistance of counsel for failure to impeach the testimony of a key witness who initially failed to identify petitioner shortly after the crime.

The Sixth Amendment to the United States Constitution recognizes the right of every criminal defendant to effective assistance of counsel.  U.S. CONST. amend. VI.  In the case of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1994), <u>reh'g denied</u>, 467 U.S. 1267, 104 S. Ct. 3562 (1984) (mem.), the Supreme Court set forth a two-prong test – both parts of which must be satisfied – to review claims of ineffectiveness of counsel.  <u>Id</u>. at 687.  First, the petitioner must demonstrate that trial counsel's performance fell below an "objective standard of reasonableness." <u>Id</u>. at 688.  Due to the difficulties inherent in evaluating counsel's conduct without the "distorting effects" of hindsight, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  <u>Id</u>. at 689 (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101, 76 S. Ct. 158, 163-164 (1955)).  Under the second prong, the defendant must establish that the deficient performance prejudiced the defense.  It requires a demonstration that counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable.  <u>Strickland</u>, 466 U.S. at 687.  More specifically, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694.

With the exception of certain fundamental decisions, such as entry of a plea or waiver of a jury trial, "an attorney's duty is to take professional responsibility for the conduct of the case, after consulting with his client." <u>Jones v. Barnes</u>, 463 U.S. 745, 753

8

n.6, 103 S. Ct. 3308, 3313 n.6 (1983).  Therefore, if a decision falls within the realm of "strategic decisions" to be made by the attorney, a reviewing court may find whatever decisions that attorney made "to be sufficiently deficient <u>only</u> if he either failed completely to consult with his client, or if the decision was itself inept or incapable of interpretation as sound."  <u>United States v. Narducci</u>, 18 F. Supp. 2d 481, 493 (E.D. Pa. 1997), <u>reconsideration</u> <u>denied</u>, No. CIV.A.97-2812, 1998 WL 122237 (E.D. Pa. Mar. 9, 1998) (emphasis in original).  This court must determine whether the state court's denial of petitioner's ineffective assistance of counsel claim was objectively unreasonable.  <u>See</u> <u>Woodford v. Viscotti</u>, 537 U.S. 19, 27, 123 S. Ct. 357, 361 (2002) (per curiam) ("'[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly.' The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal court intervention only when a state-court decision is objectively unreasonable." (quoting <u>Bell v. Cone</u>, 535 U.S. 685, 699, 22 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)).

While an ineffective assistance claim may be based on counsel's failure to impeach a witness's testimony, "[w]hether and how to conduct cross-examinations are tactical decisions that fall squarely within the domain of the attorney."  <u>U.S. v. Ciancaglini</u>, 945 F. Supp. 813, 822 (E.D. Pa. 1996) (quoting ABA Standards § 4-5.2(b); Comment to ABA Model Rule 1.2). <u>See</u> <u>also</u> <u>Government of Virgin Islands v. Weatherwax</u>, 77 F.3d 1425, 1433 (3d Cir. 1996) (quoting ABA Standards § 4-5.2(b)).  As a result, an attorney's decisions regarding the cross-examination of witnesses are strategic in nature.   <u>See</u> <u>U.S. v. Williams</u>, 70 Fed. Appx. 632, 634 (3d Cir. 2003) (dismissing an ineffective assistance of counsel claim where defense counsel decided not

to cross-examine a witness who had knowledge of defendant's personal affairs).  Thus, if trial counsel's cross-examination decisions are reasonable, they cannot form the basis of an ineffectiveness claim.  See Ciancaglini, 945 F. Supp. at 822.

In the case at bar, petitioner claims trial counsel was ineffective for failing to impeach the testimony of Ms. Kieu Lam.  Several weeks after her home was invaded and robbed, Ms. Lam saw a television program which showed images of petitioner and another individual because they were wanted in connection with a murder in Lancaster, Pennsylvania.  Ms. Lam told police that she recognized the face of Mai Huy – petitioner's accomplice - as one of the men who had robbed her.  However, although petitioner's face also appeared on the televised crime report, Ms. Lam did not identify him at that time.  In fact, approximately one year passed before Ms. Lam called the police again to report that petitioner had also been one of the men involved.

After an evidentiary hearing was conducted regarding counsel's failure to question Ms. Lam regarding her failure to recognize petitioner at the time she recognized his accomplice, the Superior Court determined that counsel had a reasonable basis for not attempting to impeach Ms. Lam.  Memorandum Opinion of Superior Court (4/25/02) at 7.  Trial counsel testified that while he wanted to reveal the fact that Ms. Lam initially failed to identify petitioner on television, he feared doing so would lead to the revelation that petitioner's face had been shown in connection with a murder investigation.  N.T. Hearing, 5/23/01 at 6-9.  In fact, he testified that he felt it was impossible to discuss the issue without "opening the door" to the subject matter of the broadcast.  Id. at 7.  Beyond this, counsel feared that even if the jury did not learn of the murder investigation, they

would deduce criminal wrongdoing from the mere fact that petitioner appeared on a television broadcast.  He testified as follows:

> Q:  Do you think, though, that you could have avoided the fact that it was the homicide – that he was wanted for a homicide through at least the police prosecutor as a more experienced witness than the lay witness?
>
> A:  Well, I don't believe that the Berks County juries are naive.  If they are going to hear that he looked – or she looked on the T.V. and saw him, Mr. Nguyen and his co-defendant on T.V., I don't believe the jury is going to believe that he was with a Boy Scout troop or something.  They were – they were going to assume there was something afoot in Lancaster.  At this point he was here.  There was no record of his presented. There was nothing.  He was just an individual accused and I just felt that anything having to do with that would hurt him. . . .

Id. at 8.  Trial counsel felt that the potential harm of a jury learning about petitioner's television appearance was greater than the potential benefits of discussing Ms. Lam's delayed identification.

On review of this claim following the evidentiary hearing, the Superior Court found that counsel probably could have cross-examined Ms. Lam without disclosing the fact that petitioner was wanted in connection with a murder investigation.  However, the court believed the jury would have still learned of petitioner's television appearance alongside his accomplice. Memorandum Opinion of Superior Court (4/25/02) at 6. Agreeing with trial counsel that a jury would deduce wrongdoing from this fact alone, the Superior Court found that trial counsel acted reasonably and accordingly denied petitioner's claim of ineffectiveness.  Id. at 7.

This court cannot conclude that the Superior Court's determination was contrary to the Strickland standard for ineffective assistance of counsel.  The Superior Court's finding that counsel made precisely the type of "strategic decision" that cannot fall prey

11

to an ineffectiveness challenge cannot be considered an unreasonable application of the federal law.  While members of the jury could have likely been kept ignorant of the murder investigation in Lancaster county[3], they would have at least learned that petitioner and his accomplice appeared on television together.  It is reasonable to assume that a jury would deduce criminal wrongdoing from this fact alone.  Testimony revealed that counsel grappled with the potential gains and losses that would come from impeaching Ms. Lam's testimony.  After careful consideration, he made a strategic decision that the risks outweighed the rewards.  Accordingly, he chose not to delve into the matter upon cross-examination.  The Superior Court found this was a sound strategy that did not fall below an objective standard of reasonableness, and this court agrees. Under the first prong of the <u>Strickland</u> test, petitioner has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Strickland</u> at 669.  We thus decline to grant habeas relief.

Therefore, I make the following:

RECOMMENDATION

AND NOW, this 29th day of J u l y   2 0 0 5 ,  I T   I S   R E S P E C T F U L L Y RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED. There is not probable cause to issue a certificate of appealability.

_____
CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

---

[3]  A trial judge has a duty to limit the jury's exposure to only that evidence which is probative and relevant. <u>U.S. v. Romano</u>, 849 F.2d 812, 815 (3d Cir. 1988).